UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KAREN R. KELLER,**

    **Plaintiff,**

vs.

    Civil Action 2:10-cv-0393
    Judge Michael H. Watson
    Magistrate Judge E.A. Preston Deavers

**JOHN R. HUGHES, *et al.*,**

    **Defendants.**

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Karen R. Keller's Motion to Remand to State Court. For the reasons that follow, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's Motion to Remand (Doc. 7).

## I.  BACKGROUND

Plaintiff Karen R. Keller ("Plaintiff") brought her current claims against Defendants John R. Hughes and Elizabeth R. Hughes (collectively "Defendants") on April 1, 2010 in the Licking County (Ohio) Court of Common Pleas. (Doc. 1–1 at 1.)  In her Complaint, Plaintiff brings several individual causes of action against Defendants including breach of contract. (*See, e.g.*, Compl. ¶ 18.)  Additionally, Plaintiff asserts a derivative suit on behalf of Generation Healthcare, Inc., alleging, among other claims, that Defendants breached fiduciary duties owed to the Company. (Compl. ¶ 26–31.)

Defendants removed the case on April 30, 2010, contending that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Notice of Removal ¶ 9.)  On May 14, 2010,

Plaintiff filed her Motion to Remand asserting that the Court lacks diversity jurisdiction.

Plaintiff is a citizen of Ohio.  Defendants maintain that the State of New York is their domicile, and therefore, they are citizens of New York for the purposes of determining diversity jurisdiction.  (Notice of Removal ¶ 6–7.)  Generation Healthcare, Inc. ("Generation") is an Ohio corporation with its principal place of business in Newark, Ohio.[1]

Plaintiff owns forty-nine percent (49%) of the outstanding shares of Generation's stock.  Although the parties dispute the matter, they maintain that either Defendant Elizabeth R. Hughes or Defendant John R. Hughes owns fifty-one percent (51%) of the outstanding shares of Generation's stock.[2]  Generation's Board of Directors consists of three individuals, Plaintiff and both Defendants.  (Compl. ¶ 5; Answer ¶ 5.)  Plaintiff is the Chief Financial Officer and Defendant Elizabeth R. Hughes is Secretary of Generation.  Defendant John R. Hughes was Generation's President until at least June 2009.  The parties dispute his current role with Generation.  (Compl. ¶ 4; Countercl. ¶ 2.)

In her Motion to Remand, Plaintiff maintains that complete diversity does not exist.  Specifically, Plaintiff contends that Generation is adverse to Plaintiff's suit, and therefore, the Court should align Generation as a party-Defendant for purposes of diversity.  (Pl.'s Mot. to Remand 6–9.)  Additionally, Plaintiff asserts that Defendant have failed to establish that they are citizens of New York for diversity purposes.  (*Id.* at 6–9.)

Defendants, on the other hand, maintain that the Court should align Generation as a

---

[1] Defendants agree that Ohio is Generation's domicile.  (Defs.' Mem. In Opp'n 4.)

[2] Plaintiff asserts that Elizabeth R. Hughes is the majority shareholder of Generation, while Defendants maintain that John R. Hughes is the majority shareholder.  (Compl. ¶ 3; Countercl. ¶ 2.)

party-Plaintiff because of Plaintiff's position of management within the company.  (Defs.' Mem. In Opp'n 4–8.)  Defendants also assert that even if Generation is a party-Defendant, the Court should exercise supplemental jurisdiction over Plaintiff's derivative action.   (*Id.* at 8–11.)  Finally, Defendants contend that they are citizens of New York for the purposes of diversity.  (*Id.* at 12–13.)

## II.  STANDARD

"'The district courts of the United States . . . are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute.'"  *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 821 (6th Cir. 2006) (quoting *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005)).  Pursuant to 28 U.S.C. § 1441, Defendants may remove a civil action to federal court if the district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).

Federal courts have "original 'diversity' jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) (citing 28 U.S.C. § 1332(a)).  When removal is based on diversity jurisdiction, the Court must determine "whether complete diversity exists at the time of removal."  *Coyne v. American Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999).  The defendants "removing a case [have] the burden of proving the diversity jurisdiction requirements."  *Id.* (internal citation omitted).  Consequently, defendants seeking removal must prove diversity jurisdiction requirements by a preponderance of the evidence. *Everett*, 460 F.3d at 829.

**III. LEGAL ANALYSIS**

    A.  Alignment of the Corporation

It is undisputed that both Plaintiff and Generation are citizens of Ohio. Accordingly, to decide whether diversity jurisdiction exists in this action, the Court must first determine whether to align Generation as a party-Plaintiff or party-Defendant.

In deciding how to align parties in a dispute "[a] plaintiff's alignment of the parties . . . is not determinative." *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 545 (6th Cir. 1994). Rather, when assessing complete diversity, "a federal court must look beyond the nominal designation of the parties in the pleadings and should realign the parties according to their real interests in the dispute." *Id.* (citing *Dawson v. Columbia Ave. Sav. Fund*, 197 U.S. 178, 180 (1905)). Generally, "[t]he corporation 'should be aligned as a plaintiff in a stockholder's derivative action since as the real party in interest it stands to benefit from a successful suit.'" *Kable v. Trinity Financial Corp.*, No. 07-CV-1131, 2008 WL 687225 at *3 (S.D. Ohio 2008) (quoting *Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir.1983)). Nevertheless, "if the corporation's management is antagonistic to the derivative claim, it is properly aligned as a defendant." *Kable*, 2008 WL 687225 at *3 (citing *Doctor v. Harrington*, 196 U.S. 579, 584 (1905)); *see also Reed v. Robilio*, 376 F.2d 392, 394 (6th Cir. 1967) ("In numerous cases, particularly stockholders' derivative suits where the question arises as to the proper alignment of the corporation, a party's 'antagonism' is deemed controlling, regardless of that party's interests."). The Court must "determine the issue of antagonism on the face of the pleadings and by the nature of the controversy." *Smith v. Sperling*, 354 U.S. 91, 96 (1957).

In *Sperling*, the United States Supreme Court analyzed the issue of management antagonism in a derivative action. *Id.* at 95–98. The Court recognized that antagonism would

4

exist when dominant officers or directors were guilty of wrongdoing, such as fraud or misdeeds. *Id.* at 95.  Nevertheless, *Sperling* emphasized that antagonism stretches beyond wrongdoing, and is present "whenever the management is aligned against the stockholder and defends a course of conduct which he attacks." *Id.*  Therefore, if management either takes or refuses to take action in a manner that makes clear that any shareholder's "demand to rescind would be futile, antagonism is evident." *Id.* at 97.

Ohio law provides guidance with respect to the interpretation of the term "management" in this instance. In particular, Ohio law specifies that except when laws, articles, or regulations require shareholder action, "all of the authority of a corporation shall be exercised by or under the direction of its directors." Ohio Rev. Code § 1701.59(A).  Accordingly, "[i]n Ohio, the 'directors of a corporation are charged with the responsibility of making decisions on behalf of the corporation and are the proper parties to bring a suit on behalf of the corporation or, in their business judgment, to forego a lawsuit.'"  *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 617–18 (6th Cir. 2008) (quoting *Drage v. Proctor & Gamble*, 119 Ohio App. 3d 19, 24 (Ohio Ct. App.1997)).

Additionally, Ohio courts have examined when a shareholder's demand of action from directors would be futile.  In this context, "[f]utility means that the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed." *Carlson v. Rabkin*, 152 Ohio App. 3d 672, 680–81 (Ohio Ct. App. 2003) (internal quotations omitted).  Thus, a demand is futile "'where the directors are antagonistic, adversely interested, or involved in the transactions attacked.'" *Kable*, 2008 WL 687225 at *4 (quoting *Bonacci v. Oh. Highway Express, Inc.*, No. 60825, 1992 WL 181682, at *4 (Ohio Ct. App. 1992)).  Because Ohio law presumes that directors will act in good faith,

"courts have consistently rejected the idea that demand is always futile when the directors are targeted as the wrongdoers in the suit the shareholders wish the corporation to bring." *Drage*, 119 Ohio App. 3d at 26. Nevertheless, futility may exist "'when all directors are named as wrongdoers and defendants in a suit . . . or when there is domination of non-defendant directors by the defendant directors.'" *Kable*, 2008 WL 687225 at *4 (quoting *Ferro*, 511 F.3d at 618).

In this case, the facts indicate that Generation's management is antagonistic to the derivative action. Generation is a closely held corporation with three directors on its board. The Plaintiff occupies one of the director positions, while Defendants control the other two. Plaintiff is a minority shareholder, owning forty-nine percent of Generation's shares, while Defendants, in some combination, own the fifty-one percent majority of Generation's shares. All three individuals were, or are currently, officers of Generation. Plaintiff's derivative action implicates both Defendants, asserting that they breached fiduciary duties, resulting in damages to Generation for which they are liable. (Compl. ¶ 29–31.) Thus, it is clear from the nature of both the corporation and the controversy, that Defendants, as directors of the board, were adversely interested in the derivative suit. Furthermore, Defendants ultimately control Generation's board of directors, by a two to one margin. Based on these facts, the Court concludes it would have been futile for Plaintiff to demand board action in this matter.[3]

Defendants contend that Generation is not antagonistic to Plaintiff's shareholder

---

[3] Although the fact that an action targets directors does not always make a demand futile, because of the closely held nature of Generation, and the structure of the board, this is a situation where "domination of non-defendant directors by the defendant directors" exists. *See Kable*, 2008 WL 687225 at *4. Additionally, because Defendant's ultimately control both the board of directors and Generation's shares, Generation is not deadlocked, but instead antagonistic toward's Plaintiff's derivative claim. *Compare Kable*, 2008 WL 687225 at *3 (finding that the corporation involved was not antagonistic when the plaintiff and individual defendant each owned fifty percent of the corporations shares).

derivative action.  Specifically, Defendants maintain that *Sperling* does not apply because of Plaintiff's "substantial financial and managerial control" over Generation.  (Defs.' Mem. In Opp'n 2.)  Defendants assert that when an individual plaintiff is a controlling officer or manager, the corporation cannot be antagonistic to the lawsuit.  They maintain that a corporation should be aligned with a controlling-officer plaintiff.  (Defs.' Mem. In Opp'n 7 (citing *Liddy*, 707 F.2d at 1224–25; *ZB Holdings, Inc. v. White*, 144 F.R.D. 42, 46 (S.D.N.Y. 1992)).)  Defendants are correct that Plaintiff is an officer and director of Generation.  The fact that Plaintiff managed the day-to-day operations and finances of Generation, however, is not controlling in this case.  Plaintiff is a minority shareholder who has only one of three board of director votes.  Defendants control the majority of Generations shares and two of the three board of director votes.  Ohio law gives primary corporate authority, and most importantly the authority to decide whether to proceed on a derivative claim, to the board of directors.  *See Ferro*, 511 F.3d at 617–18   Under these circumstances, Defendants, and not Plaintiff, control Generation's management.

   Because Defendants are adversely interested in the derivative suit, making it futile for Plaintiff to demand that the Board of Generation take action, the Court concludes that the corporation's management is antagonistic to Plaintiff's derivative suit.  Therefore, Generation is a party-Defendant for the purpose of diversity.  As a party-Defendant with citizenship in Ohio, Generation destroys diversity in this case because Plaintiff is a citizen of Ohio.

B.  Supplemental Jurisdiction

Defendants contend that even if the Court aligns Generation as a party-Defendant, the Court still retains jurisdiction.  Specifically, Defendants contend that the Court still has original diversity jurisdiction over Plaintiff's original claims and can therefore exercise supplemental jurisdiction over Plaintiff's derivative claims.[4]  The Court finds no merit to this argument.  The lack of complete diversity destroys the Court's original jurisdiction, making it impossible for the Court to exercise supplemental jurisdiction over any claims.

As a matter of statutory construction, the Supreme Court has held that 28 U.S.C. § 1332(a) requires complete diversity.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  This means that diversity jurisdiction exists only when "the citizenship of each plaintiff is diverse from the citizenship of each defendant."  *Id.*  Thus, because of "the special nature and purpose of the diversity requirement . . . a single nondiverse party can contaminate every other claim in the lawsuit. . . ."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566 (2005).

In this case, Plaintiff and Defendant Generation are both Ohio citizens.  Generation, as a non-diverse party, destroys diversity and deprives the Court of jurisdiction over the entire case.  Accordingly, because of the lack of complete diversity, the Court does not have original jurisdiction over any claim pursuant to  28 U.S.C. § 1332.  The Court cannot divide the

---

[4] Defendant relies on a 1994 district court decision for this contention.  *See First Nat. Bancshares of Beloit, Inc. v. Geisel*, 853 F. Supp. 1333, 1336 (D. Kan. 1994).  Although, the *First National Bancshares* court did indicate supplemental jurisdiction might be proper over a non-diverse derivative action, this Court concludes that the *First National Bancshares*' approach is in direct tension with the Supreme Court precedent discussed below.  *See DirecTV Latin Am., LLC v. Park 610, LLC*, No. 08-cv-3987, 2009 WL 692202 at *7 (S.D.N.Y. 2009) ("While the *First National Bancshares* court did suggest in dictum that a federal court may exercise supplemental jurisdiction over a derivative action . . . this approach that has not been followed by any other court and has been rejected by the Second Circuit. . . .").

individual claims from the derivative claims and exercise supplemental jurisdiction as Defendants request.[5]

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's Motion to Remand (Doc. 7) and **REMAND** this case to the Licking County (Ohio) Court of Common Pleas.

## V. NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

---

[5] Because the Court determines that it lacks jurisdiction based on the alignment of Generation, and that it cannot exercise supplemental jurisdiction, there is no need to decide whether the individual Defendants have established that they are New York citizens for diversity purposes.

9

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

<u>August 12, 2010</u>                                                                  <u>     /s/ *Elizabeth A. Preston Deavers*        </u>
                                                                                            Elizabeth A. Preston Deavers
                                                                                            United States Magistrate Judge